```
                  `UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Dwayne M. Valerio

    v.                                               Civil No. 15-cv-248-LM

William Wrenn et al.[1]

## REPORT AND RECOMMENDATION

Before the court is the operative complaint in this matter, consisting of the first amended complaint (doc. no. 12), the

---

[1] In the first amended complaint (doc. no. 12), plaintiff names the following defendants: New Hampshire Department of Corrections ("DOC") Commissioner William Wrenn; DOC Director of Security and Training Christopher Kench; DOC Director of Professional Standards/Special Investigator Colon Forbes; former New Hampshire State Prison ("NHSP") Warden Richard Gerry; DOC Prison Rape Elimination Act Compliance Manager Jean Carrol; NHSP Chief of Security Maj. Jon Fouts; NHSP Reception and Diagnostic ("R&D") Unit Manager Karen Anderson; R&D Corrections Officer ("C.O.") Bonnie Johnson; C.O. John Doe #1, an R&D officer; C.O. John Doe #2, the R&D first shift Officer-in-Charge on July 6, 2012; C.O. John Doe #3, the male R&D officer who conducted plaintiff's intake on July 6, 2012; C.O. John Doe #4, the officer who strip-searched Valerio on October 16, 2013; C.O. John Doe #5, the officer who monitored Valerio's strip search on October 16, 2013; C.O. John Does #6-#13, officers searching or monitoring searches of other inmates on October 16, 2013; C.O. John/Jane Doe #14, the Central Control officer monitoring video surveillance of the R&D Unit on July 6, 2012; C.O. John/Jane Doe #15, the Central Control officer monitoring video surveillance at the NHSP gym on October 16, 2013; and New Hampshire Attorney General Joseph Foster.  All defendants are sued in their individual capacities.  Wrenn and Gerry are also sued in their official capacities.

first amended complaint's exhibits, and the exhibits attached to the original complaint, which are located in the docket of this case as pages 17-50 of Document No. 1.  The operative complaint, so construed, is before this magistrate judge for preliminary review, pursuant to 28 U.S.C. § 1915A(a) and LR 4.3(d)(1), and for a report and recommendation as to the disposition of plaintiff's request for preliminary injunctive relief.[2]  See Order (Mar. 28, 2016).

## Standard

In determining whether a pro se pleading states a claim, the court construes the pleading liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Disregarding any legal conclusions, the court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a facially plausible claim to relief.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

---

[2]In an Order issued simultaneously with this Report and Recommendation, the undersigned magistrate judge has vacated the November 16, 2015, Report and Recommendation (doc. no. 9) and Order (doc. no. 10), that related to the original complaint (doc. no. 1), which are now moot.

**Background**

I.  July 6, 2012 - Intake

On the afternoon of July 6, 2012, plaintiff, Dwayne Valerio, arrived at the New Hampshire State Prison ("NHSP") Reception and Diagnostic Unit ("R&D") to begin serving a lengthy prison sentence.  Valerio arrived at the prison with another inmate.  Upon arrival at R&D intake, a male Corrections Officer ("C.O.") John Doe #3, put Valerio and the other inmate into a "wet cell" equipped with showerheads and a drain, so that they could take a delousing shower.  Prior to the shower, C.O. John Doe #3 directed each inmate to disrobe and submit to a strip search.[3]  After the inmates were strip-searched and showered, C.O. John Doe #3 provided them with prison uniforms and directed them to get dressed.

During the strip search and shower, the inmates were visible to one another.  In addition, they were visible to one another and to C.O. John Doe #3 during the strip search.  Valerio and the other inmate were monitored by surveillance and recording video camera during both the strip search and shower.

---

[3]Pursuant to New Hampshire Department of Corrections Policy and Procedure Directive 5.77(IV)(3)(a), "[a] strip search involves removing all clothing from a person and searching the clothing carefully, after which a detailed visual inspection of the individual's naked body, including inside of the mouth the groin area and the buttocks shall be conducted."

Valerio states that a female R&D officer, C.O. Bonnie Johnson, monitored the video surveillance feed from her desk. Valerio also asserts that C.O. John/Jane Doe #14, an officer in the NHSP's "Central Control," monitored the video surveillance feed from his or her desk.

## II. October 16, 2013 - Tailgate Revival

On October 16, 2013, a Christian religious event called the "Tailgate Revival" was held in the NHSP gym. The event was attended by 150 inmates and fifty civilian volunteers. After the event, the civilian volunteers were escorted out of the gym. The officers present, identified by Valerio as C.O. John Does #4-13, divided into three groups of three officers, while one officer stood at an exit door. Each inmate in attendance was strip-searched by one of the officers. Each strip search was monitored by another officer. Valerio asserts that all of the inmates were strip-searched in full view of the other inmates in the gym at that time. Valerio requested that a privacy screen be used during his search, but his request was denied. C.O. John Doe #4 conducted the strip search of Valerio, and C.O. John Doe #5 monitored the search. Present in the gym during Valerio's strip search were forty to fifty inmates and C.O. John Does #6-#13.

Valerio also states that his October 16, 2013, strip search

was monitored by C.O. John/Jane Doe #15, an officer in "Central Control," monitored the video surveillance feed from his or her desk.  Valerio states that being fully nude in front of other men violates his religious beliefs.

## Claims

In the first amended complaint, Valerio asserts the following claims for relief:

    1.   On July 6, 2012, defendants violated Valerio's federal constitutional rights, in connection with Valerio's intake at R&D, as follows:

        A.   Valerio's Fourth Amendment right not to be subject to unreasonable searches was violated when, in the absence of exigent circumstances:

            i.   R&D C.O. John Doe #3 forced Valerio to undress, be strip-searched, and shower, in front of (a) another inmate; (b) a video surveillance and recording camera;

            ii.  Female R&D C.O. Bonnie Johnson monitored Valerio's strip search and shower by video;

            iii. C.O. John/Jane Doe #14 viewed Valerio's strip search and shower on a video monitor; and

            iv.  R&D Unit Manager Karen Anderson, R&D first shift Officer-in-Charge C.O. John Doe #2, DOC Commissioner William Wrenn, former NHSP Warden Richard Gerry, DOC Director of Security and Training Christopher Kench, and NHSP Chief of Security Maj. Jon Fouts, condoned and approved video surveillance and recording of strip searches and showers in R&D's "wet tank," in their capacity as supervising officers.

    B.   Valerio's Eighth Amendment right not to be subject to cruel and unusual punishment was violated when, acting with deliberate indifference to a risk of serious harm to Valerio:

        i.   C.O. John Doe #3 ordered Valerio and another inmate to undress and shower in full view of one another and a video surveillance and recording camera; left them alone for five to ten minutes, creating a risk of sexual assault and/or abuse of Valerio by (a) another inmate, (b) staff-on-offender voyeurism, and/or (c) video voyeurism.

        ii.  C.O. Johnson sexually assaulted and/or abused Valerio by engaging in staff-on-offender voyeurism when she monitored the video surveillance of Valerio undressing, being strip-searched, and showering;

        iii. Defendants Anderson, C.O. John Does #1 and #2, Wrenn, Kench, Gerry, and Fouts failed to protect Valerio from harm when they, in their capacity as supervising officers, tacitly allowed R&D staff to utilize strip search and showering procedures that created a significant risk of sexual assault and/or abuse of Valerio by (a) other inmates, (b) staff-on-offender voyeurism, and/or (c) video voyeurism.

    C.   Valerio's Eighth Amendment right not to be subject to cruel and unusual punishment was violated when the C.O. John Doe #3 ordered Valerio to submit to a strip search in a manner that was harassing and intended to cause him humiliation and psychological pain.

    D.   Valerio's Fourteenth Amendment equal protection rights were violated when defendants C.O. John Does #2 and #3 strip searched Valerio in full view of another inmate.

2. On October 16, 2013, defendants violated Valerio's federal constitutional rights, in connection with the "Tailgate Revival" event Valerio attended at the NHSP that day, as follows:

6

A. Valerio's Fourth Amendment right not to be subject to unreasonable searches was violated when, absent any exigent circumstances:

    i. C.O. John Doe #4 denied Valerio's request for a privacy screen; forced Valerio to undress; and conducted a strip search of Valerio in full view of (a) forty to fifty other inmates, and (b) a monitored video surveillance and recording camera.

    ii. C.O. John Doe #5 monitored Valerio's strip search;

    iii. C.O. John Does #6-13 were present at the time of Valerio's strip search and failed to prevent the search;

    iv. C.O. John/Jane Doe #15 viewed Valerio's strip search on a video monitor;

    v. Defendants Wrenn, Kench, Gerry, and Fouts failed to protect Valerio from harm when they, in their capacity as supervising officers, tacitly allowed a group strip search to occur that created a significant risk of sexual assault and/or abuse of Valerio by (a) other inmates, (b) staff-on-offender voyeurism, and/or (c) video voyeurism.

B. Valerio's Eighth Amendment right not to be subject to cruel and unusual punishment was violated when, acting with deliberate indifference to a risk of serious harm to Valerio:

    i. C.O. John Does #4 and #5 ordered Valerio to undress and conducted a strip search in full view of forty to fifty other inmates and a video surveillance and recording cameras, creating a risk of sexual assault and/or abuse of Valerio by (a) another inmate, (b) staff-on-offender voyeurism, and/or (c) video voyeurism.

7

  ii. C.O. John Does #6-#13 failed to protect Valerio from a risk of sexual assault, abuse, and/or harassment by (a) another inmate, (b) staff-on-offender voyeurism, and/or (c) video voyeurism.

  iii. Defendants Wrenn, Kench, Gerry, and Fouts, acting in their supervisory capacities, failed to protect Valerio from a risk of sexual assault, abuse, and/or harassment by (a) other inmates; (b) staff-on-offender voyeurism; and/or (c) video voyeurism.

 C. Valerio's Eighth Amendment right not to be subject to cruel and unusual punishment was violated when the C.O. John Does #4 and #5 ordered Valerio to submit to a strip search in a manner that was harassing and intended to cause him humiliation and psychological pain.

 D. Valerio's First Amendment right to freely exercise his religion was violated when, absent any exigent circumstances, C.O. John Does #4 and #5, denied Valerio's conscientious objections and request for a privacy screen, and ordered Valerio to undress and undergo a strip search in full view of forty to fifty other inmates and video surveillance and recording cameras, causing Valerio's nude body to be exposed to other men and video surveillance and recording equipment, in violation of his religious beliefs.

 E. Valerio's Fourteenth Amendment right to equal protection was violated when defendant C.O. John Does #4 and #5 conducted a strip search of Valerio in full view of other inmates.

3. Valerio's Fourteenth Amendment right to due process was violated when defendants: DOC Prison Rape Elimination Act Compliance ("PREA") Manager Jean Carrol, DOC Special Investigator Colon Forbes, the DOC Director of Professional Standards, Fouts, Kench, Gerry, Wrenn, and New Hampshire Attorney General Joseph Foster failed to act within the scope of their authority on July 6, 2012, and October 16, 2013, as supervisory officers, to prevent Valerio's

```
First, Fourth, Eighth, and Fourteenth Amendment rights from
being violated.
```

## Discussion

### I. Fourth Amendment (Claims 1(A)(i)-(iii) and 2(A)(i)-(iv))

    A.    C.O. John Does #3-#5 and C.O. Johnson

Valerio has stated sufficient facts to assert Fourth Amendment claims alleging that his right not to be subjected to unreasonable searches was violated on July 6, 2012, by C.O. John Doe #3 and C.O. Johnson, and on October 16, 2013, by C.O. John Does #4 and #5. Accordingly, in an Order issued simultaneously with this Report and Recommendation, the court directs service of the first amended complaint, specifically, Claims 1(A)(i)&(ii) and 2(A)(i)&(ii) as identified above, upon C.O. John Does #3, #4, and #5, and C.O. Johnson.

    B.    C.O. Does #6-#15

Valerio also asserts unreasonable search claims against C.O. Does #1 and #6-#15. However, Valerio has not asserted that C.O. Doe #1 or C.O. Does #6-#15 either conducted or monitored a strip search of Valerio on either July 6, 2012, or October 16, 2013. As to C.O. John/Jane Does #14 and #15, Valerio has alleged only that they were assigned to monitor the challenged strip searches in Central Control. Nothing in those facts

supports a contention that those officers bear responsibility for the alleged unreasonable nature of the searches of Valerio that occurred on those dates. Accordingly, the district judge should dismiss the Fourth Amendment claims asserted against C.O. Does #1 and #6-#15 (Claims 1(A)(iii) and 2(A)(iii)&(iv)) and should drop those defendants from this action.

    C.    <u>Supervisory Defendants (Claims 1(A)(iv) and 2(A)(v))</u>

In this action, Valerio has sued a number of defendants in their supervisory capacities, including: Wrenn; Kench; Forbes; Gerry; Fouts; Anderson; C.O. John Doe #2; and Attorney General Foster. Supervisory liability under 42 U.S.C. § 1983 lies only where "an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation." <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 275 (1st Cir. 2009) (internal quotation marks and citation omitted). Here, Valerio has not stated any facts to support a claim that any supervisor's conduct, act, or omission "led inexorably" to the conduct underlying claim asserted in the complaint. Accordingly, the district judge should dismiss the claims asserted against the supervisory defendants and drop those defendants from this action.

## II. **Eighth Amendment Claims**

### A. Endangerment (Claims 1(B)(i)-(iii) and 2(B)(i)-(iii))

The Eighth Amendment "prohibits prison officials from depriving inmates of 'the minimal civilized measure of life's necessities.'" Brown v. Plata, 131 S. Ct. 1910, 1959 (2011) (citation omitted). A plaintiff asserting an Eighth Amendment prison conditions claim must allege objectively "extreme" deprivations. Hudson v. McMillian, 503 U.S. 1, 9 (1992). Further, the plaintiff must show that the responsible defendants acted with deliberate indifference to the plaintiff's health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). "'[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" Giroux v. Somerset Cty., 178 F.3d 28, 32 (1st Cir. 1999) (citations omitted).

Stripped of conjecture and legal conclusions, the facts asserted in the operative complaint do not give rise to a reasonable inference that Valerio was ever faced with a significant risk of sexual assault or abuse during, or as a result of, anything that occurred during his July 6, 2012, intake at R&D, or during or after the October 16, 2013, Tailgate Revival. Valerio does not cite any time during either occasion

11

that he was left unmonitored by security personnel, with another inmate who might have been dangerous, or that any threats, or other indicia of potential harm known to any defendant, were made to Valerio by any inmate or staff member.  The facts asserted do not support an allegation that any defendant acted with deliberate indifference to a serious risk to Valerio's health or safety, and the district judge should dismiss Valerio's Eighth Amendment endangerment claims (Claims 1(B)(i)-(iii) and 2(B)(i)-(iii)).

    B.    <u>Harassment or Humiliation (Clams 1(C) and 2(C))</u>

Valerio asserts that the July 6, 2012, and October 16, 2013, strip searches violated his rights under the Eighth Amendment. "A prisoner states a claim under the Eighth Amendment when he plausibly alleges that the strip search in question was motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order and security." <u>King v. McCarty</u>, 781 F.3d 889, 897 (7th Cir. 2015). Valerio states that the strip search was motivated by, in the first instance, his initial intake at the NHSP, and in the second instance, by his participation in a large group event involving contact with volunteers.

Valerio does not allege any particular behavior on the part of any defendant officer suggesting that the strip searches were

undertaken for any improper purpose, or with an intent to harass or humiliate Valerio. Valerio's allegations concerning the circumstances surrounding the strip search are insufficient to demonstrate that they were "conducted in a harassing manner intended to humiliate and cause psychological pain." Id. Accordingly, the facts asserted are insufficient to support an Eighth Amendment claim arising out of the manner in which the strip searches were conducted, and the district judge should dismiss those claims (Claims 1(C) and 2(C)).

### III. First Amendment Free Exercise Claim (Claim 2(D))

To assert a claim under the First Amendment's Free Exercise Clause, "'a plaintiff must initially demonstrate that his sincerely held religious beliefs have been "substantially" burdened by defendants' conduct -- specifically, that the government's action pressured him to commit an act forbidden by his religion, or prevented him from engaging in conduct or experiences mandated by his faith.'" Cooper v. Nimirowski, No. 14-cv-11-SM, 2014 DNH 53, 2014 WL 1003842 at *1, 2014 U.S. Dist. LEXIS 33875 at *3 (D.N.H. Mar. 13, 2014) (quoting Lewis v. Zon, 920 F. Supp. 2d 379, 384 (W.D.N.Y. 2013) (citing Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006))). Valerio alleges that his First Amendment right to freely exercise his religion was impinged by the group strip search that occurred after the

13

Tailgate Revival, as being nude in front of other men violates his religious beliefs and practice.  Valerio has asserted sufficient facts to assert a First Amendment Free Exercise claim (Claim 2(D)) against C.O. John Does #4 and #5, and the court directs service of those defendants in the Order issued simultaneously with this Report and Recommendation.

## IV. Equal Protection Clause (Claims 1(D) and 2(E))

Valerio asserts that the challenged strip searches violated his rights under the Equal Protection Clause of the Fourteenth Amendment.  "The Equal Protection Clause contemplates that similarly situated persons are to receive substantially similar treatment from their government."  Davis v. Coakley, 802 F.3d 128, 132 (1st Cir. 2015) (citation omitted).  To establish an equal protection claim, a plaintiff needs to allege facts showing that "'(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [the plaintiff].'"  Id. at 132-33 (citations omitted).  Proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.  Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977).

Valerio has not asserted that he was treated differently than any other similarly situated inmate on either July 6, 2012, or October 13, 2016.  Further, Valerio has not alleged that he has been discriminated against on any improper basis.  Accordingly, the district judge should dismiss Valerio's Fourteenth Amendment equal protection claims (Claims 1(D) and 2(E)).

## VI.   Claims for Injunctive Relief

In his complaint, Valerio has included a request for prospective preliminary and permanent injunctive relief.  Specifically, he seeks an order from this court directing each of the defendants in this action to perform their job duties according to institutional policy and the Constitution.

"[A] plaintiff must demonstrate standing separately for each form of relief sought."  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000).  "'[A] continuing violation or the imminence of a future violation' is necessary to confer Article III standing to seek injunctive relief."  Conservation Law Found. v. Public Serv. Co. of N.H., No. 11-cv-353-JL, 2012 DNH 174, 2012 WL 4477669 at *10, 2012 U.S. Dist. LEXIS 138881 at *40 (D.N.H. Sept. 27, 2012) (citation omitted); see also City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983) (plaintiff who had been subjected to police

chokehold lacked standing to seek injunction against enforcement of police chokehold policy in future absent credible threat he would suffer harm from the policy in the future).

Valerio's claims arise from two discreet events. Nothing in the complaint suggests that Valerio is likely to return to R&D intake and be subjected to another group shower, or that he is likely to be subjected again to a group search like that which occurred after the Tailgate Revival. See City of Los Angeles, 461 U.S. at 109. Furthermore, Valerio has not alleged any facts suggesting that injunctive relief is necessary to prevent irreparable harm. See id. at 111 (an "equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again" by unconstitutional law enforcement practices). Accordingly, the district judge should deny Valerio's request for preliminary and permanent injunctive relief, without prejudice to Valerio's ability to assert a claim for injunctive relief should circumstances warrant in the future.

### VI. PREA and Failure to Prosecute (Claim 3)

Valerio asserts that defendants Carroll, Forbes, Wrenn, Kench, Gerry, Fouts, and Attorney General Foster are liable to him for failing to investigate, report, and prosecute his claims

16

of violations of the Prison Rape Elimination Act ("PREA") and other laws.  The PREA does not provide Valerio with a private right of action.  See Saunders v. Pelkie, No. 15-CV-0225-JD, 2015 U.S. Dist. LEXIS 101067, at *2–*3 (D.N.H. June 26, 2015), report and recommendation adopted, 2015 U.S. Dist. LEXIS 102715 (D.N.H. July 31, 2015).  Further, Valerio has no protected interest or right to have alleged wrongdoers investigated or prosecuted.  Cf. Nieves-Ramos v. Gonzalez-De-Rodriguez, 737 F. Supp. 727, 728 (D.P.R. 1990) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another")).  Accordingly, the district judge should dismiss the claims asserted under PREA or arising out of any defendant's failure to investigate, report, or prosecute any violation of the law or act of official misconduct (Claim 3).

## Conclusion

For the foregoing reasons, the district judge should dismiss all of the claims in the first amended complaint except the Fourth Amendment claims asserted against C.O. Bonnie Johnson and John Doe C.O.s #3, #4, and #5, and the First Amendment claims asserted against the John Doe C.O.s #4 and #5.  The district judge should dismiss the remaining claims in this

matter, drop the remaining defendants from the case, and deny Valerio's requests for injunctive relief.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).

                                              Andrea K. Johnstone
                                              United States Magistrate Judge

April 1, 2016

cc: Dwayne M. Valerio, pro se