**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Dwayne M. Valerio</u>

    v.                                Civil No. 15-cv-248-LM

<u>N.H. Department of Corrections</u>
<u>Commissioner William Wrenn et al.</u>[1]

**REPORT AND RECOMMENDATION**

Before the court is plaintiff Dwayne Valerio's motion to amend his complaint (Doc. No. 49), to which is attached his proposed second amended complaint (Doc. No. 49-3). Counsel for the putative defendants named in the second amended complaint has filed an objection (Doc. No. 50) to the motion. Valerio has filed a response (Doc. No. 51) to the objection.

**Background**

On April 1, 2016, this court directed service of claims,

---

[1] In Valerio's proposed second amended complaint (Doc. No. 49-3), Valerio names the following defendants: N.H. Department of Corrections Commissioner William Wrenn; (former) N.H. State Prison ("NHSP") Warden Richard Gerry; NHSP Chief of Security Maj. Jon Fouts; NHSP Cpl. Glenn Daniels (formerly identified as John Doe #2); NHSP Corrections Officer ("CO") Branden Walsh (formerly identified as John Doe #3); NHSP CO Marissa, whose first name is unknown ("FNU") (formerly identified as John Doe #4); and NHSP CO FNU Sauerhaben (formerly identified as John Doe #5).

asserted in Valerio's initial complaint (Doc. No. 1) and first amended complaint (Doc. No. 12), related to strip searches on July 6, 2012 during Valerio's initial intake to the New Hampshire State Prison ("NHSP"), and again on October 16, 2013, after the "Tailgate Revival," a religious event in the NHSP gym involving forty to fifty inmates and civilian volunteers.  In the April 1, 2016 Order (Doc. No. 16), the only named defendant upon whom service was directed was NHSP Corrections Officer ("CO") Bonnie Johnson.  The remaining defendants against whom claims had been stated were identified only as John Does #3–#5.  The Doe defendants were not served at that time.  In the April 1, 2016 Order, the defendant was directed to identify the John Doe defendants.

Counsel appeared for defendant Johnson.  Johnson subsequently filed a motion for summary judgment (Doc. No. 21) as to the claims asserted against her.  That motion has been granted, and Johnson is no longer a defendant in this matter.  See Mar. 6, 2017 Order (Doc. No. 45) (approving Feb. 1, 2017 Report and Recommendation ("R&R") (Doc. No. 41)).  The claims that were authorized to be served upon the John Doe defendants remain in this case.

When counsel initially appeared for defendant Johnson in this matter, counsel notified the court that the Attorney

General's office was unable to determine the identity of any John Doe defendant at that time.  During the course of this case, counsel has made efforts to identify the John Doe defendants, but has been unable to do so.

Eventually, counsel provided Valerio with the opportunity to review photographs of all of the officers who could possibly be John Does #3-#5, to assist Valerio in identifying the officers he alleges violated his rights.  In his proposed second amended complaint (Doc. No. 49-3), Valerio identifies John Does #3-#5 by name, as well as John Doe #2.  The claims in the complaint and first amended complaint asserted against John Doe #2 were dismissed from this action after the court's initial preliminary review.  See May 3, 2016 Order (Doc. No. 18) (approving Apr. 1, 2016 R&R (Doc. No. 15)).

### Claims Asserted in Second Amended Complaint

In his proposed second amended complaint (Doc. No. 49-3), Valerio asserts the following claims for relief[2]:

> 1.    Defendant CO Branden Walsh (previously identified as John Doe #3), during Valerio's intake at the NHSP on July 6, 2012, in the absence of exigent circumstances, directed Valerio to both submit to a visual body cavity strip search

---

[2]The identification and numbering of the claims in this section will be used in this case going forward, for all purposes, replacing the claim numbers in the April 1, 2016 R&R (Doc. No. 15).

3

and to shower in the presence of another inmate and a video camera that could be monitored remotely by prison officials, in violation of Valerio's:

    A.    Fourth Amendment right not to be subjected to unreasonable searches; and

    B.    Fourteenth Amendment right to substantive due process.

2.    Defendant Cpl. Glenn Daniels (previously identified as John Doe #2), the Officer-in-Charge at the NHSP's Reception and Diagnostics Unit at the time of Valerio's intake at the NHSP on July 6, 2012, acting in his supervisory capacity, was aware that Walsh had subjected Valerio to a visual body cavity strip search and had required him to shower in the presence of another inmate and a video camera that could be monitored remotely by prison officials, in violation of Valerio's:

    A.    Fourth Amendment right not to be subjected to unreasonable searches; and

    B.    Fourteenth Amendment right to substantive due process.

3.    Defendants CO FNU Marissa (previously identified as John Doe #4) and CO FNU Sauerhaben (previously identified as John Doe #5), on October 16, 2013, subjected Valerio to a visual body cavity strip search, in front of forty to fifty other inmates and a video camera that could be monitored remotely by prison officials, without a privacy screen, and in the absence of exigent circumstances, in violation of Valerio's:

    A.    Fourth Amendment right not to be subjected to unreasonable searches;

    B.    Fourteenth Amendment right to substantive due process; and

    C.    First Amendment right to freely exercise his religion, as it violates Valerio's religious beliefs to be unclothed in the presence of other men.

4.    Defendants NHSP Chief of Security Maj. Jon Fouts, NHSP
Warden Richard Gerry, and N.H. Department of Corrections
("DOC") Commissioner William Wrenn, acting in their
supervisory capacities as policymakers for the NHSP, knew
that group strip searches were utilized at the NHSP, and
tacitly allowed, encouraged, and condoned such searches,
including the October 16, 2013 group visual body cavity
strip search to which Valerio was subjected, in violation
of those supervisory defendants' duty to protect Valerio
from harm, in violation of Valerio's:

> A.    Fourth Amendment right not to be subjected to
> unreasonable searches;
>
> B.    Fourteenth Amendment right to substantive due
> process; and
>
> C.    Fourteenth Amendment right to equal protection of
> the laws, to the extent that inmates at NCF were
> treated differently than NHSP inmates, as prison
> officials, in 2012, discontinued the practice of
> conducting group strip searches at NCF without privacy
> screens, in the absence of exigent circumstances,
> which was known to the defendants.

## **Discussion**

## I.    **Motion to Amend Standard**

### A.    Rule 15(a)(2)

Federal Rule of Civil Procedure 15 provides that the court

"should freely give leave" to amend a complaint "when justice so

requires."  Fed. R. Civ. P. 15(a)(2).  Under this standard,

leave to amend should be granted absent "'any apparent or

declared reason—such as undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" Klunder v. Brown Univ., 778 F.3d 24, 34 (1st Cir. 2015) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

B.   Rule 21

Where a proposed amendment seeks to add a new party, that request is "'technically governed by [Federal Rule of Civil Procedure] 21, which provides that the court may at any time, on just terms, add or drop a party.'" Gigunda Grp., Inc. v. Creative Collective Grp., No. 15-cv-104-LM, 2015 U.S. Dist. LEXIS 151771, at *4, 2015 WL 6872281, at *1, (D.N.H. Nov. 9, 2015) (citation omitted). "'[T]he same standard of liberality applies under either [Rule 15(a) or 21].'" Id. (citation omitted).

C.   28 U.S.C. § 1915(e)(2) and LR 4.3(d)(1)

In a case in which the plaintiff is a prisoner proceeding pro se and in forma pauperis, the court may "dismiss the case at any time if the court determines that," among other things, the plaintiff "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii). This court's local rules require the magistrate judge to conduct

6

a preliminary review of amended pleadings filed by incarcerated
plaintiffs who have sued a government agency or employee.  See
LR 4.3(d)(1)(A).  The court may dismiss an amended pleading if
the plaintiff "fails to state a claim upon which relief may be
granted, or seeks monetary relief against a defendant who is
immune from such relief."  Id.

## II.    Qualified Immunity & Fourth Amendment - Claims 1(A) & 3(A)

Valerio asserts that, on July 6, 2012, defendants subjected
him to a visual body cavity strip search and a shower, and that
on October 16, 2013, he was subjected to a visual body cavity
search.  Valerio alleges that the searches and shower were
unreasonable, in violation of his Fourth Amendment rights, as
they were conducted in the presence of one or more other inmates
and a video camera that could be monitored by prison officials
remotely, and without the benefit of privacy screens.  This
court previously allowed Fourth Amendment claims arising from
those incidents to proceed in this action against John Doe
defendants.  See Apr. 1, 2016 Order (Doc. No. 16), at 2.
Counsel for the John Doe defendants has filed an objection to
Valerio's motion to amend the complaint to name defendants to
those Fourth Amendment claims, asserting that because those
defendants would be entitled to qualified immunity, the proposed
complaint amendment is futile.  See Obj. (Doc. No. 5), at 7-10.

7

The doctrine of qualified immunity "shelters government officials from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" McKenney v. Mangino, No. 17-1378, ___ F.3d ___, 2017 U.S. App. LEXIS 19548, at *7, 2017 WL 4450989, at *3 (1st Cir. Oct. 6, 2017) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant invokes qualified immunity, the court engages in a two-step analysis. See McKenney, 2017 U.S. App. LEXIS 19548, at *92017 WL 4450989, at *4 (citing Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017)).

> First, the court must determine whether the plaintiff's version of the facts makes out a violation of a protected right. Second, the court must determine whether the right at issue was clearly established at the time of defendant's alleged misconduct. This second step is itself divisible into two components. To begin, the plaintiff must point to controlling authority or a consensus of cases of persuasive authority that broadcasts a clear signal to a reasonable official that certain conduct falls short of the constitutional norm. Then, the court must evaluate whether an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law. These inquiries are carried out with the understanding that qualified immunity is meant to shield all but the plainly incompetent or those who knowingly violate the law.

McKenney, 2017 U.S. App. LEXIS 19548, at *9-*10, 2017 WL 4450989, at *4 (internal quotation marks and citations omitted).

8

Corrections officers are liable for a violation of the
Fourth Amendment, therefore, only if the Fourth Amendment right
infringed was clearly established at the time of the alleged
violation.  See Ziglar v. Abbasi, 137 S. Ct. 1843, 1866-67
(2017).  "[T]he clearly established law must be 'particularized'
to the facts of the case."  White v. Pauly, 137 S.Ct. 548, 552
(2017) (citation omitted).  The "relevant, dispositive inquiry
in determining whether a right is clearly established is whether
it would be clear to a reasonable [official] that his conduct
was unlawful in the situation he confronted."  Rocket Learning,
Inc. v. Rivera-Sánchez, 715 F.3d 1, 9 (1st Cir. 2013) (emphasis
in original) (citations and internal quotation marks omitted).
The standard does not require a case on point but does require
"a case where an officer acting under similar circumstances as
[the defendant] was held to have violated the Fourth Amendment."
White, 137 S.Ct. at 552.

The "clearly established" inquiries here are the following:
First, would it have been clear to a reasonable officer at the
NHSP, in July 2012, that it was unlawful to subject a prisoner
to a visual body cavity strip search and delousing shower, in
the presence and view of another inmate and a prison
surveillance camera, at the time of his initial admission to the
prison?  Second, would it have been clear to a reasonable

9

officer at the NHSP, in October 2013, that it was unlawful to subject a prisoner to a visual body cavity strip search, in the presence of other inmates, staff members, and a prison surveillance camera, following an event involving contact between inmates and visitors?

As to the group strip search, recently, a judge of this court, in Baptiste v. Foster, No. 16-cv-439-JD, 2017 U.S. Dist. LEXIS 80241, at *8, 2017 WL 2303975, at *3 (D.N.H. May 25, 2017), granted a motion to dismiss on grounds of qualified immunity, with respect to very similar Fourth Amendment claims, asserted by another NHSP inmate, challenging a December 2014 group visual body cavity strip search that occurred after an event involving contact between inmates and visitors.  Finding that prison "[s]trip searches and body cavity searches must be conducted in a reasonable manner that is justified by sufficient legitimate penological interests to outweigh the significant privacy interests of the inmate," see Baptiste, 2017 U.S. Dist. LEXIS 80241, at *4 2017 WL 2303975, at *2, the Baptiste court noted that "[i]nmates may be strip searched in the presence of other inmates who are also being searched when that is necessary to prevent introduction of contraband into the prison," id. (citing Fernandez v. Rapone, 926 F.Supp. 255, 262 (D. Mass. 1996)).

With respect to whether qualified immunity shielded
defendants in Baptiste from claims challenging the lack of
privacy screens during a visual body cavity strip search, the
court noted that the "First Circuit has not held . . . that
strip searches of inmates conducted as part of a group violate
their constitutional rights." Id.  The Baptiste court next
surveyed cases in other jurisdictions, and found a lack of
consensus on whether group searches are unconstitutional, as the
result in each case depended on the specific circumstances at
issue.  See id. (citing cases).  The court in Baptiste concluded
that dismissal on the grounds of qualified immunity was
appropriate with respect to the circumstances alleged as to the
December 2014 group visual body cavity strip search, as the law
at that time was not clearly established that the manner in
which that search was conducted violated the inmate's Fourth
Amendment rights. See id.

The Fourth Amendment claims arising out of the 2013
incident at issue in this case, and in Baptiste, are similar in
all relevant respects.  In both cases, the plaintiff was
subjected to a visual body cavity strip search in front of
inmates, staff, and a surveillance camera, and in the absence of
privacy screens, after a group event at which inmates had had
contact with visitors.  Valerio's allegations concerning the

October 2013 incident, as to defendants Marissa and Sauerhaben,
are not meaningfully distinguishable from the facts in Baptiste,
and there is no principled reason for avoiding the same result
here with respect to Valerio's Fourth Amendment claim against
Marissa and Sauerhaben, identified above as Claim 3(A).  Those
defendants are entitled to qualified immunity under the
circumstances.  Similarly, based on an analysis of the same
cases cited in Baptiste, this court concludes that there was no
clearly established law in July 2012 that would indicate to a
reasonable officer in CO Walsh's position that an intake strip
search, conducted in the presence of another inmate and without
a privacy screen, would violate the Fourth Amendment.
Accordingly, the district judge should deny the motion to amend,
to the extent it contains a request to assert Fourth Amendment
claims, related to searches, against Marissa, Sauerhaben, and
Walsh, as such an amendment would be futile.

     To the extent Valerio asserts that the shower he was
ordered to take on July 6, 2012, in front of another inmate,
violated his Fourth Amendment rights, such a right was not
clearly established at that time.  "'[A]n inmate's lack of
privacy while using the toilet or shower [ ] does not violate
the Eighth or Fourth amendments.'"  Mandeville v. Spencer, No.
13-12726-LTS, 2014 U.S. Dist. LEXIS 98537, at *21, 2014 WL

3670783, at *8 (D. Mass. July 18, 2014) (quoting <u>Spencer v. Bender</u>, No. 08-11528-RGS, 2010 U.S. Dist. LEXIS 41690, at *9, 2010 WL 1740957, at *3 (D. Mass. Apr. 28, 2010)).  CO Walsh is therefore protected by qualified immunity from any claim related to Valerio's July 2012 delousing shower, and the district judge should deny the motion to amend the complaint to the extent it seeks to add such a claim, as such an amendment would be futile.

## III. <u>Substantive Due Process – Claims 1(B) and 3(B)</u>

Valerio alleges that defendants, on July 6, 2012 and October 16, 2013, violated his right to substantive due process when they subjected him to a visual body cavity strip search in the presence of other inmates and video cameras.  "Where a particular Amendment provides an explicit textual source of constitutional protection' against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  <u>Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.</u>, 560 U.S. 702, 721 (2010) (internal quotation marks and citations omitted).  As the Fourth Amendment provides a more particular and explicit source of constitutional protection from unreasonable searches, no substantive due process claim is available to Valerio as to that claim.

To the extent Valerio alleges that the acts or omissions of defendants endangered or harmed him, the Eighth Amendment would provide the specific constitutional protection for such a claim. This court has already rejected Valerio's Eighth Amendment endangerment claims in this action, finding that his allegations were insufficient to state a constitutional claim upon which relief might be granted.  See May 3, 2016 Order (Doc. No. 18) (approving Apr. 1, 2016 R&R (Doc. No. 15)).  Valerio has not included any additional facts in his second amended complaint warranting service of an Eighth Amendment claim at this time.

## IV. <u>Free Exercise – Claim 3(C)</u>

In his proposed amended complaint, Valerio asserts that, on October 16, 2013, after the Tailgate Revival event ended, the officers present prepared to conduct a group strip search of the forty to fifty inmates present.  Defendant Marissa, accompanied by defendant Sauerhaben, directed Valerio to remove his clothing and submit to a search, and denied Valeri's request for a privacy screen.  Valerio alleges that these acts violated his First Amendment right to freely exercise his religion, as being unclothed in front of other men violates his religious beliefs.

### A.   <u>Statute of Limitations</u>

Defendants object to amending the complaint to name a defendant to Valerio's First Amendment claim.  Defendants argue

that, because Valerio initially identified the defendants to the claim as John Doe #4 and John Doe #5, and those individuals were not identified by name until after the statute of limitations on the First Amendment Free Exercise claim expired, that claim, as asserted against any defendant named in the proposed second amended complaint, is time-barred.

The statute of limitations for Valerio's First Amendment claim accrued on October 16, 2013.[3]  Plaintiff first named the John Doe defendants in his motion to file a second amended complaint filed in until April 2017, which is approximately six months past the expiration of the three-year limitations period applicable in this matter.  Because the limitations period expired before plaintiff filed his motion to amend the complaint to identify John Doe #4 and John Doe #5, whether the complaint can be so amended at this time would ordinarily depend on a determination of whether the proposed amendments – the names of

---

[3]Plaintiff argues that, under the "discovery rule," his claim accrued in 2015 when he first discovered that the defendants' conduct violated his constitutional rights.  The statute of limitations does not accrue when a plaintiff first comes upon the legal theory presented, but from the date the injury occurred, assuming that "the alleged harm was not 'inherently unknowable at the moment of [its] occurrence.'" Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 44 (1st Cir. 2017) (citation omitted).  Because the court finds that, to the extent the motion to amend was filed outside of the limitations period, that the limitations period should be equitably tolled, the court need not further address plaintiff's argument.

the Doe defendants – "relate back" to June 25, 2015, the date
Valerio filed his initial complaint (Doc. No. 1) in this matter.
See Fed. R. Civ. P. 15(c) (allowing a party to amend complaint,
after the expiration of the statute of limitations, under
certain circumstances).

Assuming, without deciding, that the expiration of the
statute of limitations, prior to the filing of Valerio's motion
to amend, would ordinarily bar the amendment on timeliness
grounds, the court next considers whether the limitations period
should be equitably tolled in this case. "'The doctrine of
equitable tolling preserves a plaintiff's claims when strict
application of the statute of limitations would be
inequitable.'" Thompson v. Glodis, No. 10-40126-TSH, 2013 U.S.
Dist. LEXIS 142628, at *8, 2013 WL 5524807, at *3 (D. Mass. Oct.
2, 2013) (citation omitted).

Defendants, and defendants' counsel, have been on notice,
at the very latest, since the issuance of the April 1, 2016
Order (Doc. No. 16) authorizing claims against John Does #4 and
#5, of the court's expectation that the defendants, through
counsel, would assist in the identification of the Doe
defendants in this matter. On July 26, 2016, the court issued
an Order (Doc. No. 28), noting that, at the July 21, 2016
preliminary pretrial conference held in this case, "Defendant

16

agreed to make specific inquiry of the prison as to whether

documents or other records exist that could shed light on the

identities of the Doe defendants," and directed defense counsel

to "notify the court and plaintiff of those identities" if

discovered.  July 26, 2016 Order (Doc. No. 28), at 2.

On August 8, 2016, plaintiff sent defendants' counsel a

discovery request for production of:

> [A]ny and all documents that refer to those officers
> assigned to the Tailgate Revival as standing security
> for the duration of the event and the subsequent strip
> searches.  Documents include assignment rosters, Shift
> Commander's reports, approval roster by Security Head
> Major Jon Fouts, officer volutary [sic] assignment
> sign-up sheet and any other records identify those
> officers specifically assigned to the event as
> security.  Please note that "any other records"
> includes any and all video evidence which reveal the
> identities of the officers assigned and those officers
> who had direct contact with the Plaintiff.

Pl.'s Feb. 21, 2017 Resp. to First and Second Status Reports

Regarding the Identities of John Doe Defs., Ex. A (Doc. No. 44-

1, at 3).  According to plaintiff, defendants' counsel refused

to provide the requested information concerning the identity of

the Doe defendants on the basis that that the court had

bifurcated discovery, and the first phase of discovery concerned

only information relating to Valerio's exhaustion of his

administrative remedies, and that the identity information

Valerio sought did not pertain to exhaustion.  See id.

At a December 2, 2016 status conference, the court again asked defense counsel to make inquiry to assist the plaintiff in identifying the Doe defendants.  Defendants' counsel filed a status report (Doc. No. 39) on January 9, 2017, indicating that upon making inquiry, counsel had learned that the "best evidence" of which officers were on duty on the date of the Tailgate Revival event would have been the pertinent "Shift Commander's Report," which had been inadvertently discarded by prison staff in November 2016.  See Defs.' Jan. 9, 2017 Status Report (Doc. No. 39, at 3).  It appears that no other copy of the Shift Commander's Report, or document identifying the officers working at the Tailgate Revival was able to be retrieved.

On February 21, 2017, Valerio filed a response (Doc. No. 44) to the defendants' status report.  In that document, Valerio points out that at the July 21, 2016 preliminary pretrial conference, plaintiff "mentioned such things as shift commander reports, logs and other types of documentation which would shed light on the identities of the Doe defendants."  Feb. 21, 2017 Resp. (Doc. No. 44), at 1.  This court's July 26, 2016 Order indicated that defendants' counsel had agreed to make specific inquiry concerning those documents for the purpose of discovering the names of the Doe defendants.  July 26, 2016

Order (Doc. No. 28), at 2.  It is unclear whether counsel
specifically inquired about the documents, as requested by
plaintiff and directed by the court, prior to November 2016.  It
is clear, however, they were not obtained by defendants for
production prior to that date.

Valerio was diligent in his pursuit of the Doe defendants'
identities prior to the expiration of the limitations period,
and he requested the specific documents that were, defendants
admit, the "best evidence" of that information, in July 2016.
Had those documents been provided to Valerio at that time, they
could have been produced before they were discarded, and it may
well have been possible for Valerio to name the John Does in an
amended complaint filed prior to the expiration of the
limitations period in this matter.

Further, the names of the Doe defendants were in the
exclusive possession and control of the defendants, and
defendants' failure to promptly obtain the documents when they
were first requested inhibited the plaintiff's ability to timely
name the Doe defendants.  Moreover, defendants do not indicate
that they will suffer any particular prejudice if the
limitations period is extended in this matter.  For these
reasons, equity requires that the statute of limitations in this
matter be tolled so as to allow plaintiff to proceed against

Marissa and Sauerhaben on his First Amendment Free Exercise
Claim, identified above as Claim 3(C).

B.    Qualified Immunity

Finally, defendants argue that they are entitled to
qualified immunity on Valerio's First Amendment claim.  The
court declines to address that question at this time, in favor
of considering the defense, if presented, at summary judgment,
on a more complete record.  Accordingly, the district judge
should grant the motion to amend (Doc. No. 49) to the extent it
seeks to identify John Doe #4 as CO FNU Marissa and John Doe #5
as CO FNU Sauerhaben.

**V.    Supervisory Liability**[4]

Valerio alleges that DOC Commissioner William Wrenn, former
NHSP Warden Richard Gerry, NHSP Chief of Security Maj. Jon
Fouts, and Cpl. Glenn Daniels, acting in their supervisory
capacities, are liable to him for violations of his
constitutional rights Valerio alleges occurred on July 6, 2012
and/or October 16, 2013.  Generally, in an action under 42
U.S.C. § 1983,

---

[4]The supervisory liability claims asserted in Valerio's
complaint (Doc. No. 1) and first amended complaint (Doc. No.
12), which are all reasserted here, were dismissed from this
action after preliminary review.  See May 3, 2016 Order (Doc.
No. 18) (approving Apr. 1, 2016 R&R (Doc. No. 15)).

> [a] supervisor may not be held liable for the
> constitutional violations committed by his or her
> subordinates, unless there is an "affirmative link
> between the behavior of a subordinate and the action
> or inaction of the supervisor . . . such that the
> supervisor's conduct led inexorably to the
> constitutional violation."

Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st

Cir. 2011) (citation omitted).  Additionally, "isolated

instances of unconstitutional activity ordinarily are

insufficient to establish a supervisor's policy or custom, or

otherwise to show deliberate indifference."  Maldonado-Denis v.

Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994).

A.    Cpl. Glenn Daniels – Claims 2(A) and 2(B)

Valerio alleges that Cpl. Daniels was the supervising

officer in charge of R&D at the time Valerio went through intake

procedures at the NHSP on July 6, 2012, and is thus liable for

the allegedly unconstitutional acts of CO Branden Walsh.

Valerio alleges only that Daniels was the officer in charge of

R&D on July 6, 2012.  Valerio alleges no facts which would give

rise to an "affirmative link" between Daniels's behavior and any

constitutional violation Valerio has alleged as to his intake.

Accordingly, the district judge should deny Valerio's motion to

amend the complaint to the extent it seeks to add supervisory

liability claims against Daniels, identified herein as Claims

2(A) and 2(B), to this action.

B.    DOC Commissioner William Wrenn, NHSP Warden
      Richard Gerry, and NHSP Chief of Security Maj.
      Jon Fouts

      1.    **Fourth Amendment – Claim 4(A)**

Valerio asserts supervisory liability claims, for Fourth
Amendment violations, against DOC Commissioner William Wrenn,
NHSP Warden Richard Gerry, and NHSP Chief of Security Maj. John
Fouts, arising out of the October 16, 2013 group strip search.
Valerio alleges that these supervisory defendants were
responsible for creating, implementing, or condoning a policy,
allowing group visual body cavity strip searches without privacy
screens to be conducted, which resulted in the allegedly
unconstitutional search of Valerio.

At the time of the October 16, 2013 search, there was no
clearly established Fourth Amendment right not to be subjected
to a group strip search of which a reasonable officer would have
known.  Accordingly, even assuming, without deciding, that there
was an affirmative link between Wrenn's, Gerry's, and Fouts's
behavior in creating, implementing, and condoning the group
strip search capacity that led to the October 16, 2013 search,
those defendants are protected from liability by qualified
immunity, in regard to Valerio's Fourth Amendment claims.
Accordingly, the district judge should deny the motion to amend

22

to the extent it seeks to assert a Fourth Amendment supervisory liability claim, identified above as Claim 4(A), to this action.

## 2.   **Fourteenth Amendment – Claim 4(B)**

Valerio also alleges that, due to his incarcerative status, supervisory defendants Wrenn, Gerry and Fouts had a duty, based on the "special relationship" between inmates and their custodians, to protect him from harm.  Valerio claims that defendants violated their duty to protect him from harm that might have accrued to him as a result of the July 6, 2012 and October 16, 2013 strip searches, and that abrogation of that duty gives rise to a substantive due process claim under the Fourteenth Amendment.  That duty is limited to protecting an inmate from an "unreasonable risk of physical harm."  LeBlanc v. Gerry, No. 12-cv-84-JL, 2012 U.S. Dist. LEXIS 134073, at *6, 2012 WL 4321387, at *2 (D.N.H. Aug. 16, 2012), R&R adopted, No. 12-cv-084-JL, 2012 U.S. Dist. LEXIS 132887, at *1, 2012 WL 4321356, at *1 (D.N.H. Sept. 17, 2012).  To state a claim alleging a substantive due process violation for an abrogation of the prison's duty to protect a prisoner in its custody, a prisoner must demonstrate that the prison officials' actions were sufficiently egregious to "shock the conscience of the court."  Rivera v. Rhode Island, 402 F.3d 27, 35 (1st Cir. 2005).  Strip searches of male inmates, conducted in front of

other male inmates, after contact visits, which were conducted
by male officers and where no physical abuse occurred, do not
shock the conscience.  See Fernandez, 926 F. Supp. at 263.

Valerio's proposed second amended complaint, even
generously construed, does not include facts demonstrating that
Valerio was subjected to an unreasonable risk of physical harm,
or that any prison official engaged in conduct that would shock
the conscience, in regard to the July 2012 and October 2013
strip searches.  Accordingly, Valerio has failed to assert
sufficient facts to state a claim based on a violation of the
duty at issue.  The district judge should deny the motion to
amend to the extent it seeks to add a Fourteenth Amendment
substantive due process claim, identified above as Claim 4(B),
against Wrenn, Gerry, and Fouts, to this action.

### 3.    Equal Protection – Claim 4(C)

Valerio alleges that in 2012, officials at the Northern New
Hampshire Correctional Facility ("NCF") decided not to conduct
group strip searches of NCF inmates without privacy screens.
Valerio alleges that, as an NHSP inmate, he was treated
differently than NCF inmates when he was subjected to a group
strip search without privacy screens in 2013.  Valerio alleges
that Wrenn, Gerry, and Fouts, in their supervisory capacities,
were responsible for the differential policies at the NHSP and

the NCF.  As it was the result a result of the differential policies, Valerio alleges that the 2013 group strip search at the NHSP, conducted without privacy screens, violated his Fourteenth Amendment right to equal protection.

"'The Equal Protection Clause contemplates that similarly situated persons are to receive substantially similar treatment from their government.'"  Davis v. Coakley, 802 F.3d 128, 132 (1st Cir. 2015) (citation omitted).  To establish an equal protection claim, a plaintiff needs to allege facts showing that "'(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [the plaintiff].'"  Id. at 132-33 (citations omitted).  "Proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977).

Valerio does not allege any facts indicating that he was treated differently than any NCF inmate on the basis of Valerio's affiliation with any protected class.  Further, Valerio has failed to demonstrate that any NCF inmate who was not subjected to a group strip search without privacy screens

was similarly situated to Valerio in all relevant respects, as
there are numerous factors that might impact prison officials'
decisions concerning whether and how to conduct searches of
inmates at different facilities.  Accordingly, Valerio has
failed to state a claim of a violation of his right to equal
protection, and the district judge should deny the motion to
amend to the extent it seeks to add Wrenn, Gerry, and Fouts as
defendants to Claim 4(C).

## Conclusion

For the foregoing reasons the district judge should:

1.    Grant in part and deny in part Valerio's motion
to amend complaint (Doc. No. 49).  The motion should be
granted to the extent Valerio seeks to assert a First
Amendment claim against defendant CO FNU Marissa and CO FNU
Sauerhaben.  The motion to amend should be otherwise
denied.

2.    Drop all of the defendants named in the second
amended complaint, other than CO FNU Marissa and CO FNU
Sauerhaben, from this action.

3.    Direct that the clerk's office docket Valerio's
Proposed Second Amended Complaint (Doc. No. 49-3) as the
Second Amended Complaint, as if filed on the date of the
Order approving the October 2017 Report and Recommendation.

4.    Find that, upon approval of this R&R, the
magistrate judge should direct service of the Second
Amended Complaint upon defendants Marissa and Sauerhaben.

Any objections to this Report and Recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.

R. Civ. P. 72(b)(2).  The fourteen day period may be extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Santos-Santos v. Torres-Centeno</u>, 842 F.3d 163, 168 (1st Cir. 2016).


_____
Andrea K. Johnstone
United States Magistrate Judge

October 23, 2017

cc:  Dwayne M. Valerio, pro se
     Seth Michael Zoracki, Esq.

27